IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| L & L CONSTRUCTION SERVICES, L.L.C. and KEITH MARQUAR | | PLAINTIFFS |
| v. | CIVIL NO. 1:18cv146-HSO-JCG | |
| LONNIE FALGOUT, Individually and in his Official Capacity as Councilman for the City of Bay St. Louis, Mississippi, and CITY OF BAY ST. LOUIS, MISSISSIPPI | | DEFENDANTS |

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CITY OF BAY ST. LOUIS, MISSISSIPPI'S MOTION [42] FOR JUDGMENT ON THE PLEADINGS</u>**

BEFORE THE COURT is Defendant City of Bay St. Louis, Mississippi's ("City" or "Defendant") Motion [42] for Judgment on the Pleadings. Plaintiffs L & L Construction Services, L.L.C. and Keith Marquar have filed a Response [46] in Opposition to the Motion, to which Defendant City of Bay St. Louis, Mississippi has replied. As such, this Motion is fully briefed and ripe for review. After review of the Motion, the record, and relevant legal authority, the Court finds that Defendant City of Bay St. Louis, Mississippi's Motion [42] for Judgment on the Pleadings should be granted.

I. BACKGROUND

A.     Relevant facts[1]

Plaintiffs Keith Marquar and L & L Construction Services, L.L.C. ("Plaintiffs") were hired by Wayne McCants to build a bulkhead and pier on his property ("Project"), in Bay St. Louis, Mississippi.  Second Am. Compl. [38] at 3.  They allege that Defendant Lonnie Falgout ("Falgout"), who at all relevant times was a Bay St. Louis City Councilman, owned the property adjacent to Mr. McCants and was opposed to the Project, prompting him to take various steps to prevent it from going forward.  *Id*.  When these tactics did not succeed, Falgout purportedly threatened to use "his power, position, and authority as City Councilman for the City of Bay St. Louis to destroy" Plaintiffs.  *Id*.

Plaintiffs assert that Falgout used his power and authority as a Bay St. Louis Councilman to "erect barriers to interstate trade and to deprive [Plaintiffs] of the rights, privileges, or immunities secured to them by the Constitution of the United States of America and its many laws regulating interstate commerce."  *Id*.  Falgout is alleged to have used his position as a Councilman to: (1) call Plaintiff L & L Construction Services, L.L.C.'s ("L&L") clients and urge them to fire L&L and file complaints with the City Building Department; (2) falsely state to L&L's clients that complaints had been filed against it with the Building Department; (3) publish emails and Facebook posts falsely stating that complaints against Plaintiffs had

---

[1] Because the instant Motion is one for judgment on the pleadings, all facts in the Second Amended Complaint are accepted as true and viewed in the light most favorable to Plaintiffs.  *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016) (quotation omitted).

been filed with the Building Department; (4) assault and batter Plaintiff Keith Marquar ("Marquar") while conducting City business; (5) make false statements to the Sun-Herald and Sea Coast Echo newspapers that complaints had been filed against Plaintiffs; (6) inspect the construction work performed by Plaintiffs; (7) send a letter to Plaintiffs' customers falsely informing them that complaints had been filed against Plaintiffs; and (8) email the entire City of Bay St. Louis false information regarding complaints against Plaintiffs.  *Id.* at 3-7.  The Second Amended Complaint contends that Falgout's actions have caused existing clients to cancel business contracts with Plaintiffs and have damaged their reputation and business.  *Id.* at 6.

Marquar asserts that he repeatedly spoke to City officials about Falgout's conduct, including the City Attorney, several City Councilmembers, and the City Council as a whole during meetings.  *Id.* at 6.  On two occasions, the City Council purportedly went into executive session regarding the issues involving Plaintiffs.  *Id.*  After one of these sessions, the City Attorney directed the Building Department to release its files on Plaintiffs to Falgout.  *Id.* at 6-7.  The City is alleged to have: (1) had actual knowledge of Falgout's violations of Plaintiffs' constitutional rights; (2) directly participated in violating Plaintiffs' constitutional rights by giving Plaintiffs' files to Falgout and sending false representations to Plaintiffs' clients; and (3) ratified Falgout's pattern of harassment, thus adopting it as the policy, practice, custom, or pattern of conduct of the City.  *Id.* at 7-8.

B.   Procedural history

Plaintiffs filed a Complaint in this Court on April 27, 2018, Compl. [1], followed by a First Amended Complaint on August 19, 2018, First Am. Compl. [18]. The operative Second Amended Complaint was filed on September 4, 2019. Second Am. Compl. [38]. The Second Amended Complaint asserts four causes of action against Defendants collectively: (1) unconstitutional interference with Plaintiffs' business; (2) assault and battery; (3) libel; and (4) slander. *Id.* at 9-15.

Defendant City of Bay St. Louis ("City") has filed a Motion [42] for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that Plaintiffs have not sufficiently alleged their federal or state-law causes of action against the City. Mem. in Supp. [43] at 4. Plaintiffs have filed a Response [46] in Opposition, Resp. [46], to which the City has replied, Reply [51].

## II. DISCUSSION

A.   Legal standard

"The standard for dismissal under Rules 12(b)(6) and 12(c) is the same: 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Fodge v. Trustmark Nat'l Bank*, 945 F.3d 880, 882 (5th Cir. 2019) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)). A court must accept "all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Shakeri*, 816 F.3d at 290.

B.  Plaintiffs' state-law claims against the City (assault and battery, libel, and slander)

Plaintiffs' assault, battery, libel, and slander claims all arise under state law. The City claims that it cannot be sued for state-law tort claims because Mississippi has not waived its sovereign immunity from intentional torts. Mem. in Supp. [43] at 8. It argues in the alternative that these claims were not filed within the relevant statute of limitations period. *Id.*

Under the doctrine of sovereign immunity, "the state is free from any liabilities unless it carves an exception." *Oliver v. Noxubee Cty. Tax Dep't*, 200 F.3d 815, 815 (5th Cir. 1999) (quoting *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 443 (5th Cir. 1991)). Mississippi elected a limited waiver of sovereign immunity when it enacted the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1 through § 11-46-23; *id.*, but it included substantive limitations to that waiver along with certain procedural requirements with which a plaintiff must comply prior to filing an action against the state or a political subdivision, *Oliver*, 200 F.3d at 815. Cities are considered political subdivisions covered under the MTCA. *See City of Vicksburg v. Williams*, No. 2019-CA-00209-SCT, 2020 WL 1808211, at *3 (Miss. Apr. 9, 2020) (applying a MTCA substantive limitation to the City of Vicksburg, Mississippi); *City of Clinton v. Tornes*, 252 So. 3d 34, 37 (Miss. 2018) (applying a MTCA substantive limitation to the City of Clinton, Mississippi).

Mississippi Code § 11-46-5 contains a substantive limitation which only waives the

> immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment . . . .

Miss. Code Ann. § 11-46-5(1).  Thus, Mississippi's waiver of sovereign immunity is inapplicable to torts committed by an employee acting outside the course and scope of employment.  *Oliver*, 200 F.3d at 815.

Acts of a government employee that "shall not be considered as acting within the course and scope of his employment" include "fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations."  Miss. Code Ann. § 11-46-5(2). The MTCA specifically retains sovereign immunity for governmental entities when the conduct complained of constitutes libel or slander.  Miss. Code Ann. § 11-46-5(2) ("A governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.").  This Court has also found that "[b]oth assault and battery constitute 'some form of malice or criminal offense,'" which entitles governmental entities to sovereign immunity.  *Brown v. Wilkinson Cty. Sheriff's Dep't*, No. 5:16-CV-124-KS-MTP, 2017 WL 1479428, at *8 (S.D. Miss. Apr. 24, 2017) (quoting *McBroom v. Payne*, No. 1:06-CV-1222-LG-JMR, 2010 WL 3942412, at *5 (S.D. Miss. Oct. 6, 2010)); *see also Holloway v. Lamar Cty.*, No. 2:15-CV-86-KS-MTP, 2015 WL 9094531, at *5 (S.D. Miss. Dec. 16, 2015); *Lewis v. Marion Cty.*, No. 2:13-CV-76-KS-MTP, 2013 WL 3828522, at *1 (S.D. Miss. July 23, 2013).

The Second Amended Complaint advances state-law claims for libel, slander, assault, and battery against the City, a political subdivision subject to the MTCA. Second Am. Compl. [38] at 12-15.  It is clear that the City is immune from suit on these claims and they should be dismissed.  Because the Court finds that the City enjoys immunity under the MTCA from Plaintiffs' state-law claims against it, it need not address the City's alternative arguments regarding the statute of limitations.

B.     Plaintiffs' claims against the City under federal law

Plaintiffs raise claims against the City pursuant to 42 U.S.C. § 1983 for unconstitutional interference with their business in violation of their "Fourteenth Amendment rights to substantive due process and equal protection of the law." Second Am. Compl. [38] at 1, 10.  The City argues that Plaintiffs have failed to state a claim against it for a violation of either substantive due process or equal protection, and that even if they have, they have not demonstrated that the City is liable for those violations.  Mem. in Supp. [43] at 4.

To establish a claim of municipal liability pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate the existence of three elements: (1) a policymaker, (2) an official policy, and (3) the violation of a constitutional right whose moving force is the policy or custom.  *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018), as revised (Sept. 25, 2018), cert. denied, 139 S. Ct. 1211 (2019) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)).  A municipality cannot be held liable for the acts of its employees based upon a theory of respondeat superior.  *Bd.*

7

*of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

1. <u>Existence of a policymaker</u>

Under § 1983, liability only attaches to decisions of final policymakers. *Owens v. City of Flowood*, No. 316CV00451CWRLRA, 2017 WL 368725, at *2 (S.D. Miss. Jan. 23, 2017) (citing *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004)). Under Mississippi law, a municipal board such as a city council acts as a body, *id.*; *Smith v. Bd. of Supervisors*, 86 So. 707, 709 (Miss. 1921), and its members cannot individually decide or implement policy, *Owens*, 2017 WL 368725, at *2. When the municipality's policymaker is a multimember board, "the separate actions of individual members of the Board are not sufficient to bind the Board as an entity." *Griggs v. Chickasaw Cty.*, 930 F.3d 696, 704-05 (5th Cir. 2019) (quoting *Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 521 (5th Cir. 1998)).

It is beyond dispute that the policymaker whose actions may attach liability to the City in this case would be the City Council. *See id.* Falgout, as an individual member of a multimember board, could not implement policy by himself and the City cannot be held liable for his actions as an individual. *See Owens*, 2017 WL 368725, at *2. Thus, the Court may consider only those actions which the City Council undertook as a board when evaluating whether Plaintiffs have stated a

plausible claim against the City. *See id.* According to the Second Amended Complaint, these actions included the City Council's alleged knowledge of Falgout's actions, its purported ratification of his actions, its conduct in going into executive session, and the subsequent release of Plaintiffs' Building Department files to Falgout. Second Am. Compl. [38] at 6, 7-8.

2. <u>Existence of an official policy</u>

Plaintiffs advance two theories to establish the existence of an official policy of the City to support their § 1983 claim: One premised upon ratification and the other upon failure to act. *Id.* at 11.

An official policy under § 1983 usually takes the form of written policy statements, ordinances, or regulations. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). It may also arise as a result of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy," *id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)), or through "a single action by a municipal official possessing final policymaking authority regarding the action in question [which] constitutes the official policy of the municipality," *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001) (citing *Brady v. Fort Bend Cty.*, 145 F.3d 691, 698 (5th Cir. 1998)).

As the Court has discussed, at the times relevant to this suit the City Council was the final decision-making authority and policymaker for the City. Neither party asserts that there was any official written policy which deprived Plaintiffs of

their constitutional rights, nor that the City engaged in a widespread practice or custom representing municipal policy.  Thus, the Court must evaluate whether Plaintiffs have stated a plausible claim of municipal policy through its collective acts of either purportedly ratifying Falgout's conduct or failing to act.

   a. Ratification

Plaintiffs maintain that the Council "ratified" Falgout's pattern of harassment and thus adopted it as the official policy of the City.  Second Am. Compl. [38] at 6, 7-8.  It appears that Plaintiffs' position is that this ratification occurred when the City Council went into executive session, after which the City Attorney directed the Building Department to release its files on Plaintiffs to Falgout.  *Id.*; Mem. in Opp'n [46] at 7.

Where "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  However, the theory of ratification is limited to "extreme factual situations." *Peterson*, 588 F.3d at 848.  Such circumstances have been found to exist where a policymaker approved of and supported officers "pour[ing]" gunfire onto a truck and killing an innocent occupant, but not where a policymaker approved of and supported an officer shooting a fleeing suspect in the back.  *Compare Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification in case in which officers "poured" gunfire onto a truck and killed innocent occupant), *with Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (refusing to find ratification in case in

which officer shot fleeing suspect in the back).  In *Grandstaff*, ratification was found where, following the shooting, there were no reprimands, no discharges, no admissions of error, and no changes in policy.  *Grandstaff*, 767 F.2d at 171.  In *Snyder*, the court distinguished *Grandstaff* by finding that shooting a fleeing suspect was not an extreme factual circumstance showing pervasive recklessness.  *Snyder*, 142 F.3d at 797-98.

Plaintiffs' pleadings do not clearly articulate exactly what information regarding Falgout's conduct Marquar disclosed to the City Council as a whole.  The Second Amended Complaint offers few facts to show how the Council approved of Falgout's actions or its basis for doing so.  Even if the facts as alleged could be construed as making this showing, accepting them as true, they do not rise to the level of an "extreme factual circumstance." *Peterson*, 588 F.3d at 848.  Plaintiffs have directed the Court to no authority, nor has it located any, requiring the Council to control the speech or activities of individual members under facts such as those asserted here.

The only potential facts Plaintiffs allege which could arguably support a theory of ratification is the allegation that following the closed executive sessions the City Attorney directed the Building Department to release Plaintiffs' business files to Falgout.  Second Am. Compl. [38] at 7-8.  However, Plaintiffs have not pleaded sufficient facts tending to show what prompted the City Attorney's direction to the Building Department or how that was the result of a joint decision by the City Council.  Not only is it speculative what occurred during the executive

11

session, Plaintiffs have alleged no facts that would show how the City Council somehow ratified Falgout's sending letters afterwards, or that the Council would have been aware of his intention to do so after it directed the release of the files. Moreover, Plaintiffs have pleaded no specific facts identifying any actual harm suffered as a result of this letter. The conduct of which Plaintiffs complain, allowing the release of Building Department files, does not rise to the level of the "extreme factual circumstances" required to create municipal liability based upon a theory of ratification. *See Snyder*, 142 F.3d at 797-98; *Grandstaff*, 767 F.2d at 171-72.

      b. <u>Failure to act</u>

      Citing *O'Quinn v. Manuel*, 773 F.2d 605 (5th Cir. 1985), Plaintiffs argue that the City should be held liable under § 1983 because the City Council possessed knowledge of Falgout's alleged constitutional violations and failed to take action to correct or remedy them. Mem. in Opp'n [46] at 6-7. While *O'Quinn* does contemplate a finding of liability against a municipality based upon a failure to act, it qualifies that such liability only arises where there is a duty to act imposed by state or local law. *O'Quinn*, 773 F.2d at 608-09. Plaintiffs have not alleged what, if any, duty the City owed them to control Falgout's individual actions or statements. Nor have they cited the Court to any state or local law which imposed such a duty upon the City Council. There is no basis to find the City liable for a failure to act when Plaintiffs have not alleged facts or pointed the Court to any appropriate legal authority showing how it owed a duty to do so.

In sum, Plaintiffs have not pleaded sufficient facts to state a plausible claim that the City implemented a municipal policy through the City Council's actions. *See Beattie*, 254 F.3d at 602. Because Plaintiffs have not properly pled the existence of an official policy of the City that was the moving force behind any alleged deprivation of their constitutional rights, Plaintiffs have not stated a plausible claim for relief against the City under a theory of municipal liability.

### III.  CONCLUSION

After a thorough review and consideration of Defendant City of Bay St. Louis, Mississippi's Motion [42] for Judgment on the Pleadings, the record as a whole, and relevant legal authority, the Court concludes that the City's Motion [42] for Judgment on the Pleadings should be granted, and Plaintiffs' claims against Defendant City of Bay St. Louis, Mississippi should be dismissed without prejudice. To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant City of Bay St. Louis, Mississippi's Motion [42] for Judgment on the Pleadings is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs Keith Marquar and L & L Construction, L.L.C.'s claims against Defendant City of Bay St. Louis, Mississippi are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGE**D, this the 16th day of June, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE